No. 18.—Thomas J. Johnson and others, plaintiffs in error, *vs*. Fowler Holt and E. L. Newton, defendants in error.

[1.] The power of reviewing *all* the decisions, *interlocutory* and *final*, of the Superior Courts, even those depending upon *mere* discretion, of right belongs to the Supreme Court; yet it will not interfere to correct the abuse of discretionary power, unless it has been exercised in an illegal, unjust, or arbitrary manner.

[2.] Courts of chancery being clothed with greater amplitude of discretion than courts of common law, a Court of Errors will interfere more sparingly with the exercise of the discretionary powers of the *former* than the *latter*, notwithstanding the duties of both are discharged by the same incumbent, in Georgia.

[3.] The act of 1811, *(Prince*, 438,) which declares that, " in all cases of injunction, they shall be disposed of and a decision made at the *second* term of said court, held in and for said county where such suit originated," means the *second* term after the parties are served and the cause set down for trial.

In Equity.   Motion to dismiss bill for want of prosecution.   In Decatur Superior Court.   June Term, 1847.   Before Judge Warren.

For the circumstances of the case and the points made below, see the opinion delivered by the Supreme Court.

BAILEY & SEWARD, for the plaintiffs in error, cited *Hotchk.* 681; 4 *Hawks* 371; 1 *Edw. Ch. R.* 617; 5 *Cond. Ch. R.* 165; 11 *Id.* 173; 2 *Mad. R.* 405; 15 *Ves. Jr.* 291.

HINES & HINES and SULLIVAN & MOORE, for defendants.

*By the Court.*—LUMPKIN, Judge, delivering the opinion.

The defendants in error sued Duncan Curry, as the administrator of Josiah Everett, and obtained judgments for debts owing them, and levied their executions on the negroes in dispute in the action of trover, in the hands of Curry. They brought a bill for discovery, relief and injunction, to the December Term, 1845, of Decatur Superior Court, against the plaintiffs in the action of trover, who were seeking to recover the same property out of the estate of Everett. Curry was made a party defendant to the bill. At June Term, 1847, a motion was made to dismiss the bill, on the ground, that nearly two years had elapsed and all the parties were not yet served. Richard K. Hines, Esq., in answer to said motion, stated in his place, that at June Term, 1846, he understood from John P. Gaulding, the resident counsel of complainants, that all the parties had been served. The demurrer to the bill was then argued, and the same was held up for advisement. At December term thereafter it was re-argued and overruled, and the usual rule taken for the defendants to demur, plead and answer, &c. That in June, 1846, the original bill, on which were the entries of service, was handed to his honour, Judge Warren, and that the same was not again brought back until the present term, the argument upon the demurrer having been had on the second original for Thomas county, and that he now discovered, for the first time, the want of the service, by the return of the sheriff.

Upon this showing the Court refused to dismiss the bill; whereupon the solicitor for the defendants excepted.

[1.] We are met *in limine* with a plea to our jurisdiction. It is contended by the counsel for the defendants in error, that a writ does not lie to this Court from an interlocutory order or decree of

the Court below, in the exercise of its discretionary powers, or touching the mode of its proceedings.

If this position be tenable, this Court will be relieved from a portion, at least, of its onerous labours.

By the fifth section of the statute creating this Court, the right of appeal is expressly given, "for alleged error in any decision, sentence, judgment or decree of the Superior Courts, in all causes of a criminal or civil nature." The comprehensive language of the statute seems to give the unrestricted right of appeal from *all* decisions. It extends to *interlocutory* orders therefore as well as to *final* judgments; to sentences made in the exercise of *discretionary power*, as well as any other; and it is best, no doubt, that such a tribunal should be vested with this plenary power. For the ultimate determination of a cause, may, and not unfrequently does, depend upon the direction given to the intermediate proceedings.

The *Supreme Court* of the State of New York is clothed with authority almost precisely similar to our own. 1 *R. L.* 134. The right of appeal is there given, "to all persons aggrieved by any sentence, judgment, decree or order of the court of chancery." And their judges frequently intimated, that there was a class of orders of the court of chancery which they would not review; and the effort was earnestly made to establish the line of distinction, beyond which they would not go, and yet they acknowledge frankly, that they have retired from the task from the conviction that it was impracticable. 2 *Johns. Cas.* 415; 2 *Caines Cas. in Error*, 142; 3 *Johns. Rep.* 566; 4 *Id.* 510; 9 *Id.* 443; 12 *Id.* 41, 5 10.

As the legislature then, has not seen fit to fix any limits to what begins to be now generally esteemed as a valuable right by our citizens, we do not feel at liberty to circumscribe or curtail it.

We are told that, unless we disclaim jurisdiction in appeals of this character, we shall be oppressed and overwhelmed with business. Such has not been the experience of the past two years; but few cases of this sort have been brought. Nor does the history of Appellate Courts, in our sister States and of Great Britain, verify this prediction.

The profession then and the public, may abide with confidence in the rule already established, and in the construction given to the organic law securing the right of appeal—namely; that the power of reviewing *all* the decisions, *interlocutory* and *final*, of the

Johnson and others *vs.* Holt and another.

Superior Courts, even those depending on mere *discretion*, of right belongs to this tribunal; yet it will not interfere to correct the abuse of *discretionary* power, unless it has been exercised in an illegal, unjust or arbitrary manner.

And one important reason, among others, why this control should be used sparingly, is that the circuit Judge is usually better acquainted with all the facts and circumstances of each particular case than we can possibly be. Where the circuit Judges constitute the Appellate Court, as in South Carolina, this difficulty is to a good degree obviated. But, separated entirely, as we are, from the circuit bench, we will, for that reason, confide more to their discretion.

[2.] As it respects the case under consideration, we do not think that it comes within the rule which we have prescribed for our guidance ; moreover, it may be added, that the courts of chancery have a wider latitude of discretion than courts of common law. And although the duties of both are discharged by the same functionary in our State, nevertheless, looking to the nature and essential difference of the two jurisdictions, we might feel ourselves justified in relieving more readily against the abuse of discretion on the common law, than the equity side of the Superior Court.

[3.] It is urged in behalf of the plaintiff in error, that the act of 1811 is imperative ; that all bills of injunction shall be disposed of, and a decision made, at the *second* term of the court held in and for the county where such suit originated. *Hotchkiss*, 681. But this statute must mean, the *second* term after the service is perfected and the cause set down for trial, because the death of one or both of the parties might absolutely prevent the bill from being served by the *second* term after the injunction was granted.

We will not say that unnecessary delay has not intervened in the present case ; and we cordially concur with Lord Eldon, that one of the greatest hardships attending litigation, is certainly the length of time the party is obliged to live in court before the decision of his cause. Mr. Hines, however, in answer to the motion to dismiss, assigned reasons for the delay, which satisfied the chancellor; and the inclination of our mind is, to sustain his decision.

Judgment affirmed.